We're ready to proceed with our next case 20-3082, Animal Legal Defense Fund v. Kelly. Mr. Lau, do I have that? Am I pronouncing your name correctly? Both of you have your mics off and I see Judge Murphy's mic is off also. That is correct, Your Honor. My name is Brant Lau. You may proceed. Thank you. Good morning to the Court and Counsel, and may it please the Court. My name is Brant Lau. I'm the Solicitor General of Kansas, arguing today on behalf of the State of Kansas Defendants' Appellants, who are the Governor and the Attorney General. In 1990, the Kansas Legislature passed the Kansas Farm Animal Facilities Protection Act, prohibiting unauthorized entry to animal facilities by those who intended harm. Nearly three decades later, the appellees here challenged the Act as an unconstitutional violation of their free speech rights under the First Amendment to the United States Constitution. The District Court agreed, but was wrong for three essential reasons. First, the Act does not regulate protected speech because entering private property is not speech. Second, the Act does not regulate protected speech because false speech intended to inflict damage is also not protected. And third, the Act is not improperly content or viewpoint-based. As to the first reason, the Kansas statutory protections do not regulate speech because they concern non-speech conduct. The provisions are all premised on and prescribe entering an animal facility. Entering private property, even when access is premised on a lie, is not speech, and regulating that entry is effectively a form of trespass. The United States Supreme Court has recognized that the First Amendment does not create a right to trespass. This traditional First Amendment principle was not changed by United States v. Alvarez, which was relied on by the District Court. Well, it's not a question of whether the First Amendment protects you from a trespass action. The issue is whether where you're not barring all trespass, but you're only prohibiting trespass that's based on certain intended speech, if you can do that under the First Amendment. So it's a question of whether you can use the First Amendment as a shield here to protect you from trespass, but rather whether where you limit the scope of the trespass action based on the speech that is intended or the speech that is made to get the job, that that is different. Well, we would contend, to use your analogy, that this is an attempt to use the First Amendment as a sword to gain access to private property that is traditionally protected by trespass. And that's the first element of speech, the lie that is told to obtain access, a lie that was specifically referred to by Justice Kennedy in the Plowley opinion in Alvarez. And then the second element of alleged speech is after the lie has been used to commit the trespass, the trespass is used as leverage for the additional speech about what is going on in the facility trespassed upon. So there are two layers of alleged speech arguments. We believe they're both wrong. They essentially revolve around the illegal trespass and are certainly within the legislature's discretion to regulate, the legislature having regulated trespass since statehood, frankly, in Kansas. That's what I was going to ask you. Go ahead. No, you go. Please. When you say traditionally has prohibited trespass, is there anything prohibited by this statute that is not prohibited by the general criminal trespass statute in Kansas? It's just that it is the whole purpose to increase penalties. In other words, the penalties are different. And that would be the primary focus. Certainly, common law trespass on the civil side and criminal trespass on the criminal side both preexisted this statute. And we believe that criminal trespass could have included the use of falsehoods to obtain access to the property. But the Kansas legislature chose to make a policy decision to enshrine that into this statute and to provide for, at least in a couple of circumstances, different and more severe criminal trespass penalties. Well, there's a there's a Kansas Court of Appeals case that says that consent to enter property is invalid if it's through deceit. Is that not part of the criminal trespass law in Kansas also? Certainly. And I assume the case you're referring to is the K-8, the television station case from 1979. And there the court found that there was a jury question about whether consent was given. So, yes, that pre-existed. So my question was, is there anything prohibited by this statute that was not that already prohibited by Kansas's criminal trespass statute? I think that offenders could have been charged under the existing statute before this statute existed. You're right that there is an overlap. But, of course, that's not unusual in the law. Any criminal indictment. I'm asking. I'm not saying it was bad or good. I'm just trying to get it straight, what the law was. You say there was an overlap. Is there something prohibited in this statute that is not prohibited by the criminal trespass statute? No, we don't believe so. OK, that's all I want to know. Go ahead. So what is the purpose of this statute then? Well, the purpose is, first of all, the different punishments. This trespass statute contains several punishments that are different than the regular Kansas criminal trespass statute 21-5808. For several sections, the punishments are increased. They're at a higher level. By the way, that's not unusual in Kansas law. Kansas also has a separate criminal trespass statute for trespassing on nuclear generating facilities. And the other thing that would be important is it was a policy decision by the legislature to highlight the significance of these facilities and the need for protection. And that's certainly within their policy judgment to have declared. But on the nuclear facility, does it have anything to do with speech that you made statements to get on that were false or that you went on with the purpose to later disparage the nuclear facility? No, Your Honor, that provision, which is 66-2303, does not have those kinds of provisions. I mean, that's certainly a big difference here. In Alvarez, the Supreme Court, focusing on the fraud, the lie, as you put it here, said that there was no right to prohibit people from telling falsehoods for falsehood's sake alone. That's correct. And here, so you have to show that there's some harm from the falsehood here, right? The lie to get on the property. And frankly, I think your best argument is the offer of employment, but you didn't make that in the district court. You didn't make it here until your reply brief. So I think that one is gone. So for me, then, the issue is whether trespass standing alone is enough to overcome the Alvarez decision. Can you tell me why that should be the case? Well, the Alvarez requirement, and I'll come back in a minute to the offer of employment. The Alvarez requirement is that there be some material harm or damage. And trespass, traditionally, is the type of tort civilly where just nominal damages apply even if there are no proven damages. So the nature of trespass is one of those property rights in the bundle of sticks that when it's violated, it's deemed to have damaged or hurt the property owner. So we would contend that trespass in and of itself is sufficient under the Alvarez analysis. I think it's important to mention that Justice Kennedy, twice in his plurality opinion, referred to a lie as the basis for an offer of employment as something that could be actionable consistent with the First Amendment. And that might be a really good argument if you had made it, but you didn't. You made it for the first time in your reply brief before us. We would have to rely on the record there. We believe that it's a valid argument in the case, Your Honor. Let me ask you a different question. You said something which I didn't think was correct in answer to a question from Judge McHugh. And I want to make sure you're saying it. You said that the nuclear facility trespass statute doesn't prohibit deceit to obtain access. But that is common law under the restatement of torts, second torts. And it was stated as the law in a civil context similar to this in a Kansas Court of Appeals decision. Are you saying that someone would not be guilty of criminal trespass of a nuclear facility if access to the facility was obtained through deceit, through a false statement? No, not at all, Your Honor. What I was referring to was... What you're saying is that there's not specific language to that effect. That's correct. The statute doesn't contain the same language as the Farm Animal Protection Act. But you're correct that under the common law of criminal trespass, entry by deceit would still be a trespass as to a nuclear generating facility. That separate statute provides increased penalties for trespassing at a nuclear generating facility. And that's because in general law, it's not true everywhere. But generally, consent is not effective if it was obtained through fraud, through lying to somebody. Isn't that correct? Yes, I believe that is correct. And it's been stated as the law in Kansas, has it not? Yes, I believe that would predate this statute as part of the traditional law of trespass. I wanted to clarify that. Go ahead. Very good. As to the second reason that we believe the district court is wrong, we believe these Kansas provisions fall into a well-recognized category of unprotected speech, regulating only false speech that is intended to inflict damage. This goes to the question that you were asking, Judge McHugh. We believe that the distinction is that false statements accompanied by harm are not subject to the same protection as in cases of defamation, fraudulent solicitation, or other causes of action. Alvarez criminalized only falsity and nothing more. But the harm here flows from the videography or the pictures. It does not flow from the false consent form. Isn't that correct? Well, we don't believe that's entirely correct. That is a separate First Amendment argument that once the trespass has been committed, they should be allowed to engage in First Amendment activity using the benefit of the trespass. So that is only the second of the First Amendment arguments that they make. I would like to reserve the rest of my time for both. Does that make it a worse argument just because it's number two? Is that the point? The harm here, if any, flows from the pictures, not from the consent. Well, the harm flows both from the fraudulently obtained consent and then what's done after they obtain access based on the fraudulent consent, based on the trespass. And the second element, the photography or the video, is not in of itself a protected First Amendment activity. They don't have a right to commit trespass. You would agree, wouldn't you, that when you say that there's harm from the consent, that this is a chain of causation theory you have. That is, if they hadn't done the consent, there would not have been the pictures and the pictures caused the harm. Therefore, the consent is part of that chain and the consent caused the harm, too. Isn't that the theory that you're relying upon? Yes, I think that's our argument. Yes. All right. Thank you. I would reserve the balance of my time for both. Professor Chen? Good morning, Your Honors. Alan Chen representing the Animal Legal Defense Fund and the other appellees. This case involves, as you know, the Kansas statute that represents an attempt to shield the animal agriculture industry from public scrutiny by punishing undercover investigators who reveal information about animal welfare, food safety and labor conditions, all matters of profound public concern. I'd like to take a minute just to put the enactment of this statutory provision in context. Mr. Lau points out that the original act was enacted in 1990. It was not until 2012 that the Kansas legislature amended the law to add the anti-deception provisions that make the types of undercover investigations my clients are involved in illegal. That is roughly around the same time that several other Western states were adopting similar provisions of what we call ag-gag laws. We believe that the legislative history, as cited in our brief from page 41 to 43, demonstrates that the legislature had in mind animal welfare organizations at the time it enacted both the original law and the anti-deception provision in 2012. I'd like to first respond to Mr. Lau's argument about trespass, which obviously is one of the major issues here. This is no ordinary generally applicable trespass law. As the court has already pointed out, general trespass law already protects property rights or property owners' rights to exclude others, both in the civil common law of trespass as well as the criminal statute enacted by the Kansas legislature. So do you agree that anything that your clients would want to do that would violate this law could be prosecuted under the general criminal trespass statute? I don't, Your Honor. I mean, I understand you're saying this 1979 court of appeals case involving the television station. That involves a completely different set of circumstances. Yes, but it stated a principle that's stated in the restatement second of torts, did it not? It did. It suggested that in conflict with other jurisdictions that deception might vitiate consent. Well, when you say there are some jurisdictions that say it's forbidden and deception doesn't matter. Some say it can. There are jurisdictions that say you can't record a conversation with somebody unless both of you agree. And there are some that just require one person to agree. So Kansas has a recognized property right that you cannot come on my property by obtaining my consent through deception. And that seems to distinguish Alvarez because that's a legal interest that is violated through deception. So I'd like to. There are lots of there are lots of ways to attack this statute. And I want to try to figure out what what the heart of the problem is. And it doesn't seem like it's the deception. So respectfully, I disagree, Your Honor. I suspect you do. So Alvarez says there has to be a legally cognizable harm. Well, what's the exact language? Is it legally cognizable harm or does it talk about a legal interest? It talks about legally cognizable harm. It also talks. Justice Breyer's concurrence talks about specific harms to identifiable individuals. But our argument here is even if this were a technical trespass under Kansas law, the types of interests that are underlie trespass law are protection of a property owner's ownership and possession of the land. Once somebody even if somebody accesses property through deception by lying about their affiliation with an animal protection group, it does not cause the types of trespass or harms that the law of trespass is designed to protect. Well, let's explore that. Let's explore that. Say someone comes on the property and then starts filming. And the owner says, I don't want you doing that. You're going to have to stop. And the person says, no, I have a First Amendment right to continue to film this. And the property owner says, well, I'll call the cops then. And the person continues to film and stay there. And the cop comes. And the cop arrests the person for violation of law of criminal trespass. Is that a violation of the First Amendment? In that context, Your Honor, are you saying the initial access was through deception? No, I'm just saying someone's on. It's step by step. Someone comes on my property and you're saying I have no interest in keeping someone from filming it. I'm asking, does that mean that someone could continue to film even after I said, get out of here? I don't like you're doing it. And could that person be prosecuted for criminal trespass? Probably, Your Honor, under the Kansas statute. So what if I said, I just want to take a string of hypotheticals here to see what the issue is. So say someone comes on my property and then wanders in the back and starts photographing things that were not open to the public. And a security guard sees this on a security camera and tells the person to leave. Same result? Does that violate this person's First Amendment right to arrest him for that, him or her? Well, first of all, there's a difference between civil trespass and criminal trespass. I'm asking, say it's criminal. Say it's a criminal case. Right. So if the conduct preceding the filming is itself illegal, that's a different situation. No, I'm not saying that. I'm not saying that. Well, OK. In this case, yes. When the guy goes in the back. Yes. OK. So what our argument is that the unique thing about AG-AG laws is they couple two elements of expression that are protected by the First Amendment. First, the freedom to lie under Alvarez when it doesn't cause a tangible or material harm. That's why. OK. Prohibition on filming. Yeah. I think I know what your argument is. I'm trying to see how it holds up under different hypotheticals. What if I posted a sign outside saying no filming? Or you promised or you cannot come in if you if you come in, I promise. Well, say there's a convention. And I want everything off the record. I'm the organizer of the convention. I say you have to promise that you won't do any filming. You won't record anything here while you're here. And then you say, yes, you lie and you come in and you film. Is that. Is that a violation of the First Amendment if that person is prosecuted for violating for trespassing in that circumstance? Again, Your Honor, there's a distinction. So so the property owner in that case, the convention operator could file a breach of contract action under a generally applicable breach of contract law. They might be able to argue for a civil some sort of fraud under generally applicable law. That's not this law. This is the law. This law opposes the power of the state to criminalize this conduct. OK, so so so I want to. I want to focus on what it is that's wrong about this. OK. And and you're saying that if this person who entered the convention under false under false promise and recorded stuff, that that would be it would be it would violate that person's First Amendment rights to criminally prosecute that person. Is that what you're saying? Yes, because the deception. What if what what if it what what if it were a convention of abortion providers who did that? Are you are you aware that someone's been prosecuted for that? I understand there's some civil litigation going on about that. There's been a criminal prosecution, too. Again, you're saying and you're saying that that person is protected by the First Amendment from. And the scenario that you've offered your honor and the hypothetical you've offered where there's deception about access and then there's filming and it's punished by criminal law and put it in prison. Yes, I believe that person would have a First Amendment right. They might. Again, there's a distinction between the the convention organizers right to file a breach of contract claim or a fraud claim. Yeah, yeah. OK, but not. Why is that? Why? Because now you're empowering the state to force coercive force. Let me interrupt, please. I'd like to focus on whether this statute is content neutral and viewpoint neutral. And I'd like you to tell me, even if we were to accept that does that there were otherwise unprotected. Can you have a statute that is not? Are there problems with not being content neutral and viewpoint neutral? Are you talking about the argument or our principal argument about the actual statute? The actual statute, the actual statute is both viewpoint and content based is the district court held on its face. The statute only punishes people who engage in the deception with the intent to damage the animal enterprise. That is not the type of physical harm that is prohibited under subsection a of 1827. But clearly it extends to and the state is not disavowed. This extends to types of reputational harm, republication harm that the federal courts have said can damages cannot be imposed on First Amendment activity outside of outside of the context of defamation. So if I lied to enter this animal facility, but I did it because I wanted to post letters of appreciation to the facility and then post, write an article about how great it was, I wouldn't be liable under the statute, correct? Would not have had the requisite intent to damage the enterprise. And is that problematic for the constitutionality of statute? It is. It targets people who are critical of the animal agriculture industry and not supporters as this report properly found. Well, isn't that isn't that standard in criminal law that intent to harm? If you. Committed an assault with intent to do something that that's go ahead. Sorry, your honor. Judge hearts. The problem here is that there's no limiting principle. There's no definition in the statute that limits what intent to damage the enterprise means. So we have no problem with saying that the state has the authority to prohibit somebody who lies to get onto an agricultural property in order to destroy it or to set it on fire or to do to physical, actual, tangible damage. But the statutory language here is not limited to physical or tangible harm, which is really addressed in under subsection a. So it clearly includes reputational harm and publication damages, as Judge Murphy pointed out, because what the state is really concerned about here is the bad publicity that's going to be provided to the public about the treatment of animals and food safety issues and labor conditions in this industry, which is clearly a matter of public concern. Turning back to judge. So this is an overbred claim. I didn't notice an overbred claim. We filed an alternative overbred claim, your honor, in the district court, but the court did not feel the necessity to reach that claim. OK, so let's let's let's eliminate the overbred and leave that for the district court for possible future consideration. Absent the overbred claim. I'm sure you're familiar with Wisconsin versus Mitchell. And that said, if if you. What was the disorderly conduct or something? And and if it's with racial animus, that's OK. It's all right to increase the penalty for racial animus. Right. So so. But yeah, go ahead. That's a sentencing enhancement case, your honor, as opposed to a case that involves the crime itself. Well, I thought we've already established this is essentially a sentencing enhancement statute because the same conduct is already prohibited in the general trespass law. Do they have to be in the same statute? If this were and if this were an added provision to the general criminal trespass statute saying additional penalties, which the jury has to find, would that would that make a difference? Again, if the if the if the trigger of the criminal punishment is the intention to engage in First Amendment activity. Yes. And the court in Wisconsin version Mitchell did not does not conflict with that. Before my time is out, I'd like to add, I'm going to give you plenty of time. You'll have plenty of time. This is worth pursuing. So don't be too excited about that. So. Is are you focusing then on the provision of the statute relating to filming? Because that's the only language in the statute that we're considering that specifically addresses speech. Go ahead. So, no, the anti deception provision specifically target speech as the court is the district court found this law criminalizes the conduct of my clients based on what they say or may not say. So the deception is as well as the photography provision. Those are two distinct ways in which the law regulates speech that's protected and covered by the First Amendment. I wanted to also add. So, okay, let's set aside the deception for a moment. And then the the First Amendment flaw is limited to the filming the video recording and photography provision is that are you saying that. The creation of a video is protected speech. And but for the other provisions of the statute, the First Amendment problem is limited to the deception provision in the statute. Is that correct? Correct. But subsection C, which contains the video provision, all four of those subsections could be violated by video videography or photography because there's an attempt subsection. There's an entering with the intent to video video report. So all of subsection C is prohibits video recording. But if that if the video recording part were eliminated. The flaw in the statute would be the only First Amendment flaw would be the deception is that my understanding correctly. Correct. So the deception. Again, as we as we argued is not does not in this context, the deception does not cause the kinds of And the court there. This court did not hold it found that there was a First Amendment right that the Wyoming Data Trespass Law was unconstitutional. I was on that panel. I'm familiar with that. I know you were. If this if this court were to is it were to uphold Kansas's argument, the implications for free speech would be would be wide because the same types of deception to gain access to private property that are used by my clients investigators are also used by undercover journalists by civil rights testers by union salts as pointed out by the United Farm Workers amicus brief. By investigators pursuing false claims act claims, even law enforcement officers would technically engaged in a sting operation could be technically prosecuted under the statute by act by by by disguising their entities identities as law enforcement officers and gaining access to an agricultural facility. Why is that? I don't understand what's so terrible about prohibiting deception when if the person goes ahead and does something, they could be removed from the property and it wouldn't be a First Amendment problem. That's why I went to the hypothetical about someone's on my property and taking pictures and they haven't used any deception up to then. I said, get off. If I can do that. Why can't I say beforehand? You cannot come in. If you're going to photograph like the like the Indian Pueblos in New Mexico, don't allow photography or they at one time they didn't some didn't and or you have off the record proceedings and you don't allow cameras in the courtrooms. So if I can prevent you, if I can kick you off doing something, why can't I say you can come in unless you promise not to do that? Then why then can't you be prosecuted or lying about that? Just as you could be prosecuted for not leaving after I tell you to leave. If you are explain what I'm missing there. Well, the property owners perfectly. There's nothing about the law that the First Amendment that prohibits the application of generally applicable. I'm in law contract and tort principles and the First Amendment is is not a defense to generally applicable laws, but that's not what this law is. This law specifically targets the very conduct that is used by undercover investigators to reveal misconduct and to publish information of great public concern. So, yes, if an employer says you sign this contract, and that says you're not an animal rights investigator, the employer might be able to sue for breach of contract or terminate the employment based on a misrepresentation. That is different from what the state has done here, which is imposing criminal penalties. Well, could they have been? But apparently it would also be violating the Kansas General Trespass statute. So if that if that's correct, maybe maybe you want to challenge that. But if that's correct. Then if we eliminated the recording, video recording, et cetera, provision, then why would this statute be any more offensive than the general criminal trespass statute? Why would it be a violation of the First Amendment to prosecute under the Kansas statute as as. But it wouldn't be violative of the First Amendment to prosecute under the general criminal trespass statute. Again, the general the the general criminal trespass statute requires the posting of notice and the informing the trespasser that they are no longer welcome on your property. So isn't that but I thought that's what's required. By this statute, it says they have to have notice. And the notices can be a specific sign or it can be just understood or or is the problem here that it doesn't require the agricultural facility to put up a sign saying no photography, no video in here. Only subsection D sort of mirrors that provision of the Kansas criminal trespass statute. The other provisions do not, Your Honor. I'm sorry, I don't know. I missed something. Subsection D is the only subsection that mirrors the notice provision of the of the generally applicable Kansas criminals trespass statute. Well, I thought. Okay, maybe I missed something there. Go ahead. If I could just add a point, and I will point out that we asked for 30 minutes for this argument. Yeah, I missed that. I was wondering why are we just getting 15 minutes. So I'm going to apologize to my colleagues, but I think this deserves 30 minutes to aside. But go ahead. Your Honor. The other thing I wanted to say was about your question about invalidating only the video recording portion of the statute. Unless the entire statute is invalidated as a district court held, there's no way for investigators to access the property in the first place because they're not going to walk up to a slaughterhouse and say, can we come in, we're from the Animal Legal Defense Fund, can we come in and film your properties and your operations in order to reveal possible illegal or unethical conduct. So striking down only the video provision is really sort of a half measure in terms of the ability of this type of investigation to be conducted in the state of Kansas. And again, this applies not just to animal rights investigators, it applies to journalists and civil rights testers and union assaults, both of which the U.S. Supreme Court has recognized engage in lawful activity when they lie about their backgrounds in order to gain access to private property in order to reveal, in the case of civil rights testers, racial steering practices by realtors and landlords. And in the case of unions, the Supreme Court has recognized that someone can lie about their union affiliation in order to get a job at a non-union workplace in order to organize. Was that a First Amendment case or under the National Labor Relations Act? It's under the National Labor Relations Act, as is the civil rights testing. But my point is that it would violate Kansas law for an organizer to go into a slaughterhouse and try to organize its employees without identifying themselves as a member of the union, as a hired paid union organizer, as it would a civil rights tester who wanted to find out if a slaughterhouse was engaging in employment discrimination. They would be gaining access to the property for their job interview with the intent to damage the enterprise to the extent that the results of their investigation would result in the enforcement of federal civil rights law. Or in the case of the union, the intent to damage would be organizing a union that would result in a collective bargaining agreement that might require the animal enterprise to pay higher wages or improve working conditions. Because again, the Kansas legislature did not see fit to limit the definition of damage to the enterprise, both of those things would be criminal under the statute as it exists. So the scope is far and wide. Now, I'm not sure I completely answered Judge McHugh's question about viewpoint and content discrimination. I also wanted to point out that in addition to the overt intent requirement, which as the district court held, makes it facially viewpoint-based, the law is also content-based in sort of more mundane ways, which is the law prohibits false speech and allows truthful speech. But that form of content discrimination is the reason that the Supreme Court had to decide United States versus Alvarez. Punishing false but not truthful speech that does not cause a material or tangible harm under Alvarez is a form of content discrimination that is forbidden by the First Amendment. In fact, the court described the Stolen Valor Act and Alvarez as a content-based speech regulation. In addition, the state has chosen to only focus on the animal agricultural industry, with good reason, because the animal agriculture industry is so essential to the Kansas economy. But that focuses us on the idea that this law, that they don't prohibit undercover investigations of nursing homes or of childcare facilities or other types of facilities that they are less concerned about protecting the reputations of, apparently. So that makes it a subject matter discrimination, because it only focuses… prohibit a law that criminalizes threatening the life of the president but doesn't criminalize threatening the life of a judge. How do you distinguish that situation? No, because the prohibition on the particular subject matter is animal agriculture. If you look at the definition of what an animal facility is, under the statute it covers anything from a slaughterhouse to an animal research lab to a university to an elementary school that is conducting an experiment with a live animal. So it's the focus, it's the subject matter that is regulated, but it's speech about the subject matter that's regulated. So it is just like the state could not pass a law prohibiting criticism of the agriculture industry but not criticism of other industries. That would be a subject matter-based form of content discrimination, also triggering heightened scrutiny under the First Amendment. I interrupted you while you were responding to Judge McHugh's question. That's what I was doing just now, was trying to flesh out my content and viewpoint discrimination argument. So essentially we have two arguments why it's viewpoint-based, two why it's content-based. It's viewpoint-based because of the intent provision, intent to damage the enterprise. It's viewpoint-based because if you look at the legislative history, the Kansas legislature was clearly concerned about animal rights investigators coming into Kansas and doing the types of investigations that my clients have done in Texas and Nebraska. States that don't have similar laws. So those are the two viewpoint arguments. It's content-based because it regulates truthful, it prohibits false but not truthful speech. And it's content-based because it's focused only on the subject matter of animal agriculture. So I wanted to completely, that was the response to Judge McHugh's earlier question, but I got cut off. Any questions? Okay, thank you, Professor. I appreciate the indulgence of the court with all this extra time, Your Honor. Thank you. Mr. Lau? You may proceed. Yes, just a couple of points in response to the arguments of counsel. First of all, in parsing the statute regarding the video recording and photography, I think it's important to note that that is only one of the three sections of the statute that is at issue here. So if the court were to take particular note of that in a constitutional sense, that's only in subsection C of the statute and subsections B and D could be upheld. Let me also then move to the content and viewpoint discrimination discussion that counsel was just having. So it seems to me that the first point he makes just has to be wrong. It cannot be unconstitutional as a matter of content and viewpoint discrimination. To say that the legislature is focusing on a certain industry, that's a matter of policy judgment and policy preference about the legislature's determination of what is needed. And to say that just because one industry has a separate trespass statute and another doesn't, it somehow violates content and viewpoint discrimination aspects of the First Amendment. Almost certainly we would say has to be wrong. The next argument would be someone would be in front of this court saying that the statute regarding nuclear facilities is wrong because it's some sort of content or viewpoint discrimination. The issue with content and viewpoint is whether in order to enforce the statute you have to focus on the content of speech or the particular viewpoint advanced by that speech. In your nuclear facility, the statute has absolutely nothing that would implicate that. So I'm having a hard time following that argument. Well, except that it is a statute directed at a particular industry, which I think was the first element of what Mr. Chen was arguing. The second element in our view is that it's not pure content or viewpoint discrimination. It's whether it is impermissible content or viewpoint discrimination. And it's not impermissible when positive views have no possibility of inflicting harm to the enterprise. But can you point me to anything that says that truthful speech is harmful? No, I don't believe so. So if they film what's actually happening and then they publish it, it's truth. It's truthful speech. I don't think you get to hang your harm hat on truthful speech. Well, the point of the harm here is that the statute provides for the harm to the enterprise or the business that's conducted there. And the supposed discrimination consists entirely of the very reason that this entire class of speech is prescribable. The reason it is prescribable is because it causes harm, just like the false statement by the security salesman subjects him to securities fraud charges. A security salesman who gives correct information isn't subject to the First Amendment because of the truthfulness of it. Even if the truthful information is harmful to the business because it reduces sales, right? I think we're talking about two different elements of truth and harm. I'm speaking about the harm that comes from the dissemination of the speech. You're speaking about the harm that comes from the videoing, video or photography aspect of the speech. Here, that's part of the chain I was discussing with Judge Murphy. But I'm not understanding you. Are you telling me that you can claim harm even if every aspect of the speech is truthful? Oh, certainly. For the same reason that the speech was unprotected in the first place. The speech was unprotected in the first place because under Alvarez and all the cases that say you cannot get the right to trespass based on the First Amendment. There is no basis, notwithstanding the fact that the video they ultimately make wrongfully inconsistent with the way in which they obtain access to the property. Notwithstanding the fact that it shows what actually happened or occurred. They had no right to make the video and they're still subject to prosecution under the statute. Consistent with the First Amendment. Finally, just a couple of other points that I would like to make. I think it's worth noting that this statute does not ban all First Amendment activity by groups like the plaintiff group here. It just affects their preferred method of engaging in First Amendment activity. They have many alternatives. Justice Berger referred to the availability of alternatives in the KQA case where he said that they could get letters from the prisoners inside of the jail facility. In the same manner here, the plaintiffs have the First Amendment right to look outside the facility, to attempt to make contact with folks working at the facility. Simply, the ban here is on their preferred method of First Amendment activity. Finally, I wanted to bring to the court's attention that many of these same issues are pending in the Eighth Circuit in a case that was argued in September and is pending decision. Do you have the name? Yes, that case is ALDF v. Reynolds and the case number is 19-1364. In conclusion, your honors, agriculture is a vitally important element of the Kansas economy and the potential harm from unauthorized intrusions like those at issue here is very real. The Kansas legislature acted reasonably when it passed the trespassing law at issue here and that law does not violate the First Amendment. The district court should be reversed. Thank you very much, gentlemen. Case is submitted. Counsel are excused.